ACCEPTED
03-15-00259-CV
8030878
THIRD COURT OF APPEALS
AUSTIN, TEXAS
12/1/2015 12:06:19 PM
JEFFREY D. KYLE
CLERK

# HUSCH BLACKWELL

Elizabeth G. Bloch
111 Congress Avenue, Suite 1400
Austin, TX 78701-4043
Direct: 512-703-5733
Fax: 512-480-5002
heidi.bloch@huschblackwell.com

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS

12/1/2015 12:06:19 PM

JEFFREY D. KYLE
Clerk

December 1, 2015

Jeffrey D. Kyle, Clerk
Court of Appeals
Third District of Texas
209 West 14th Street, Room 101
Austin, Texas 78701

      Re:    Case No. 03-15-00259-CV; *Becky, Ltd. v. The City of Cedar Park, et al.*

Dear Mr. Kyle:

On behalf of Appellant, Becky, Ltd., I ask that you distribute copies of this letter to the panel that will hear oral argument in this case tomorrow, December 2, 2015, at 1:30 p.m.: Justices Puryear, Goodwin, and Bourland. The purpose of this letter is to bring to the Court's attention additional legal authority.

In *Lacy v. Hoff*, 633 S.W.2d 605 (Tex. App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.), the city's Planning and Zoning Commission had refused to approve the plaintiff's subdivision plat. The plaintiff appealed to the city's Board of Adjustment and requested a variance to the subdivision ordinance provisions, which the Board of Adjustment granted. *Lacy*, 633 S.W.2d The court held that while the city's Board of Adjustment had appellate authority over the Planning and Zoning Commission's *zoning* recommendations, it had no authority regarding the Planning and Zoning Commission's *subdivision plat approval* decisions. *Lacy*, 633 S.W.2d at 609-10. The court held that the Board of Adjustment's action in exercising appellate jurisdiction over the Planning Commission's plat approval decision and its attempt to grant a variance were "void," and "a nullity" as only the Planning Commission had been granted that authority.

AUS-6199654-1 521106/1

Similarly here, the City Council's attempt to grant Milestone a waiver or variance of the subdivision ordinance requirements was void and a nullity since the Planning Commission had the sole authority to take any such action.

A copy of the *Lacy* decision is attached for your convenience. It was cited with approval by the Texas Supreme Court in *FM Prop. Operating Co. v. City of Austin*, 22 S.W.3d 868, 876 (Tex. 2000), for the proposition that "subdivision regulation ensures, among other things, adequate streets and alleys, police and fire protection, and sanitary conditions."

Thank you for your courtesies.

Sincerely,


*/s/ Elizabeth G. Bloch*
Elizabeth G. Bloch


Attachment

cc:   VIA EFILING
     Cobby Caputo
     Mark Hawkins
     Leonard Smith

**633 S.W.2d 605 (Tex.App. —Houston [14 Dist.] 1982)**

**Jerry LACY, et al, Appellant,**

**v.**

**William B. HOFF, Appellee.**

**No. B2860.**

**Court of Appeals of Texas, Fourteenth District, Houston**

**April 8, 1982**

John F. Olson, Olson & Olson, Houston, for appellant.

Charles M. Haden, Houston, for appellee.

Before JUNELL, MURPHY and ROBERTSON, JJ.

JUNELL, Justice.

This is an appeal from an order granting appellee's application for mandatory injunction or mandamus. Appellee sought and was granted a mandatory injunction or mandamus against the individual members of the Planning and Zoning Commission, the City Engineer, and the Permit Clerk of the City of Hunter's Creek Village, Texas to compel approval by the Planning and Zoning Commission of appellee's plat to subdivide certain property within the city, and the issuance of a building permit.

In 1968, appellee subdivided a 2.382 acre tract of land located within Hunter's Creek. The subdivision, Soldier's Creek, was platted and filed of record with the County Clerk of Harris County. The recorded plat of the subdivision reflects two lots, identified as Lot 1 and Lot 2. Appellee later conveyed Lot 1 and a portion of Lot 2 to a third party not involved in the present litigation.

On January 9, February 14, and March 26, 1980 and January 28, 1981, appellee submitted a lot and construction plan to the Planning and Zoning Commission (the same body serves both capacities as per article 1011f Tex.Rev.Civ.Stat.Ann. (Vernon Supp. 1980-81)) in an attempt to divide that part of Lot 2 still owned by him into two lots so that a second home could be built on the property. The plat submitted January 28, 1981 is entitled "Subdivision of a 1.3276 Acre Tract of Land being Lot 2, Block I of Soldier's Creek." On each occasion the Planning and Zoning Commission refused to approve the plan based upon conflicts with certain provisions of Ordinance No. 11, the city's planning and zoning ordinance in effect at the time. [1] The initial refusal occurred on January 9, 1980. On January 24, 1980, appellee appealed and applied to the city's Board of Adjustment for a variance to the ordinance's provisions. The Board granted the requested variance. Appellee then returned to the Planning and Zoning Commission for approval of his plat. Before a construction permit could issue, approval by the Planning and Zoning Commission and recordation was required by Ordinance No. 11. The Planning and Zoning Commission again denied the approval.

In a trial before the court, the trial judge ordered the variances granted by the Board be adhered to by the Commission and granted a mandatory injunction or mandamus that the

Commission's approval be given.

Resolution of this problem lies in the application of acticle 974a Tex.Rev.Civ.Stat.Ann. (Vernon 1963 and Supp. 1980-1981) and articles 1011a-1011j Tex.Rev.Civ.Stat.Ann. (Vernon 1963 and Supp. 1980-1981). The trial court filed conclusions of law which held: (1) That the proposed division of land was not a subdivision under article 974a; (2) Articles 1011a-1011j give a municipality's Zoning Commission the power to approve proposed uses of land; and (3) The Zoning Commission's decisions may be appealed to the municipality's Board of Adjustment, the decision of which is binding upon the Zoning Commission, absent further appeal. We disagree.

Article 974a and articles 1011a-1011j, were passed in the same year to serve separate and distinct functions and set up separate and distinct Commissions. Although one body may serve in a dual capacity, as a Planning Commission and as a Zoning Commission, their duties and functions serve to further different yet related goals.

ARTICLES 1011a-1011j

The general grant of authority for zoning is found in articles 1011a-1011j. Article 1011a provides that a city may regulate the use of land for the purpose of preserving, promoting, and protecting the health, safety, and general welfare of the inhabitants of the city. City legislative bodies are "empowered to regulate and restrict the height,

Page 607

number of stories, and size of buildings, and other structures, the percentage of lot that may be occupied, the size of yards, courts and other open spaces, the density of population, and the location and use of buildings, structures, and land for trade, industry, residence or other purpose..." Article 1011b authorizes a city to create separate zoning districts with different regulations and restrictions on use of land and buildings from district to district. Article 1011c provides that "(s)uch regulations shall be made in accordance with a comprehensive plan and designed to lessen congestion in the streets; to secure safety from fire, panic, and other dangers; to promote health and the general welfare; to provide adequate light and air; to prevent the overcrowding of land; to avoid undue concentration of population; to facilitate the adequate provision of transportation, water, sewerage, schools, parks and other requirements .... (and) shall be made with reasonable consideration, among other things, to the character of the district and its peculiar suitability for particular uses, and with a view to ... encouraging the most appropriate use of land..." Articles 1011d-1011e provide procedures for the creation, amendment, supplementation, modification, repeal or change of districts and regulations.

In order to take advantage of the powers conferred by these articles, article 1011f authorizes the creation and existence of a Zoning Commission. When a City Planning Commission already exists, it may be appointed as the Zoning Commission. A Zoning Commission has no ultimate authority; its sole purpose and function is to act in an advisory capacity to the City Council to recommend boundaries of various zoning districts and regulations to be enforced therein. Prior to any amendment to a district boundary or change in a zoning regulation, if a Zoning Commission has been appointed it shall hold a public hearing thereon and make its recommendation to the City Council. *Clesi v. Northwest Dallas Imp. Ass'n,* 263 S.W.2d 820 (Tex.Civ.App.-Dallas 1963, writ ref'd n. r. e.); *Simons Land Co. v. City of Dallas,* 507 S.W.2d 828 (Tex.Civ.App.-Waco 1974),

motion for reh. denied, 510 S.W.2d 32 (1974, no writ); *Dilbeck v. Bill Gayner, Inc.,* 368 S.W.2d 804 (Tex.Civ.App.-Dallas 1963, writ ref'd n. r. e.).

Article 1011g authorizes the creation and existence of a Board of Adjustment. A Board of Adjustment is a quasi-judicial body, which may be authorized "in the regulations and restrictions adopted pursuant to the authority of this Act" to perform three functions:

(1) To hear and decide appeals where it is alleged there is error in any order, requirement, decision, or determination made by an administrative official in the enforcement of this Act or of any ordinance adopted pursuant thereto.

(2) To hear and decide special exceptions to the terms of the ordinance upon which such Board is required to pass under such ordinance.

(3) To authorize upon appeal in specific cases such variance from the terms of the ordinance as will not be contrary to the public interest, where, owing to special conditions, a literal enforcement of the provisions of the ordinance will result in unnecessary hardship, and so that the spirit of the ordinance shall be observed.

Tex.Rev.Civ.Stat.Ann. art. 1011g(g) (Vernon Supp. 1980-1981). See *Board of Adjustment of City of Fort Worth v. Rich,* 328 S.W.2d 798 (Tex.Civ.App.-Fort Worth 1959, writ ref'd); *Swain v. Board of Adjustment of City of University Park,* 433 S.W.2d 727 (Tex.Civ.App.-Dallas 1968, writ ref'd n. r. e.), cert. denied, 396 U.S. 277, 90 S.Ct. 563, 24 L.Ed.2d 465, reh. denied, 397 U.S. 977, 90 S.Ct. 1085, 25 L.Ed.2d 274; *Texas Consol. Theatres v. Pittillo,* 204 S.W.2d 396 (Tex.Civ.App.-Waco 1947, no writ).

ARTICLE 974a

Article 974a authorizes cities to regulate subdivision development and thereby implement planning policies. The basis of subdivision control is the land registration system. Registration is a privilege that appropriate regulatory bodies have the power to grant or withhold based upon the compliance

Page 608

with certain conditions. The entire regulatory scheme depends upon the recordation of the plat. Although article 974a § 1 provides that landowners who divide their property into two or more parts shall cause a plat to be made, no penalty is provided for failure to do so. See Mixon, Installment Land Contracts: A Study of Low Income Transactions, 7 Hous.L.Rev. 523 at 564 (1970); Pohl, Establishing and Altering the Character of Texas Subdivisions, 27 Baylor L.Rev. 639 (1975). Landowners may avoid regulation by subdividing and selling lots by metes and bounds descriptions. However, Article 974a § 4 authorizes the promulgation of city rules and regulations concerning plat approval which may include sanctions for failure to plat. See also art. 974a § 8; Pohl, supra. By way of sanction, Ordinance No. 11 provided that (n)o building permit shall issue for construction or improvements until the subdivision plat or map in its final form is approved by the Planning and Zoning Commission, bears written evidence of approval as executed thereon by the Planning and Zoning Commission, and is properly recorded in the records of Harris County." City of Hunter's Creek, Texas, Ordinance No. 11, § 10(1) (1955).

Article 974a § 3 and § 4 authorizes the creation and existence of a Planning Commission. The general duties of a Planning Commission are to enforce the platting requirements of article 974a

by refusing to endorse approval on any plat which does not satisfy the minimum requirements of 974a, and the rules and regulations adopted by the City Council governing plats and the subdivision of land. Since Hunter's Creek has provided for a Planning Commission, the authority to approve or disapprove the plat falls under their purview. Thus, in order for appellee to obtain a building permit his first step was approval by the Planning Commission in order that the plat could be recorded, and a building permit issued.

Section 4 further evidences the planning aspect by providing the directives to the governing body for cities and towns and the authority upon which to base its power to approve or disapprove the plat as follows:

Sec. 4. If such plan or plat, or replat shall conform to the general plan of said city and its streets, alleys, parks, playgrounds and public utility facilities, including those which have been or may be laid out, and to the general plan for the extension of such city and of its roads, streets and public highways within said city and within five miles of the corporate limits thereof, regard being had for access to and extension to sewer and water mains and the instrumentalities of public utilities, and if same shall conform to such general rules and regulations, if any, governing plats and subdivisions of land falling within its jurisdiction as the governing body of such city may adopt and promulgate to promote the health, safety, morals or general welfare of the community, and the safe, orderly and healthful development of said community (which general rules and regulations for said purposes such cities are hereby authorized to adopt and promulgate after public hearing held thereon ), then it shall be the duty of said City Planning Commission or of the governing body of such city, as the case may be, to endorse approval upon the plan, plat or replat submitted to it. (emphasis added).

The grant of such authority in § 4 of 974a cannot be considered as the bestowal of some superfluous authority upon a Planning Commission. Under Ordinance 11 it was incumbent upon any subdividers should they desire to have their plats filed for record in the County Clerk's Office to submit their plats to the Planning Commission for its official consideration and action thereon. Obviously, when the Planning Commission acts thereon it can disapprove and refuse to authorize the filing of such plat if such plat fails to meet the requirements of the cities ordinances. By virtue of such authority a city may insure adequate access is provided to all tracts of land for municipal services (police and fire protection, garbage collection, animal control, etc.) by requiring minimum standards for street frontage and street construction, and

Page 609

that such required streets will comply with the city's overall extension plans. Article 974a is the vehicle by which a city is able toplans for orderly growth and development within its boundaries (and by virtue of article 970a Tex.Rev.Civ.Stat.Ann. (Vernon 1963) outside its boundaries).

Zoning contemplates the prohibition of certain physical uses of land which are detrimental to the health, safety, and welfare of the community. It allows a municipality to create districts where land uses are limited or restricted to specific enumerated purposes. *Ellis v. City of West University Place,* 141 Tex. 608, 175 S.W.2d 396 (1943), *City of Corpus Christi v. Jones,* 144 S.W.2d 388 (Tex.Civ.App.-San Antonio 1940, writ dism'd judgmt. cor.), *Wallace v. Daniel,* 409 S.W.2d 184 (Tex.Civ.App.-Tyler 1966, writ ref'd n. r. e.); See generally Rathkopf, The Law of Zoning and

Planning, ch. 1 at 17, et seq (4th ed.).

Planning contemplates adequate provision for orderly growth and development. The purpose of the statute on plats is to require governmental approval to insure adequate provision has been made for streets, alleys, parks and other facilities indispensable to the particular community affected. It protects future purchasers from inadequate police and fire protection, insures sanitary conditions, and other governmental services. See *Crownhill Homes, Inc. v. City of San Antonio,* 433 S.W.2d 448 (Tex.Civ.App.-Corpus Christi 1968, writ ref'd n. r. e.); Rathkopf, supra ch 71 at 6 et seq. The statutory tool for implementation of planning is the city's ability and authority to require compliance with certain standards as a condition precedent to subdivision plat approval.

ORDINANCE NO. 11

Appellee was denied plat approval for the reason that the proposed plat did not conform to the express provisions of Section 9 of Ordinance 11. Section 9 regulated plats and the subdivision of land. Although the ordinance's beginning resolution ostensibly indicates that the entire ordinance is being passed pursuant to the authority of articles 1011a-1011j, an examination indicates that rules and regulations were promulgated in three separate and distinct areas; Sections 1-7, 11, and 13 provided regulations related to zoning; Section 8 provided regulations regarding minimum standards for plumbing and electrical work in the City by adopting plumbing and electrical codes; and Sections 9 and 10 provided regulations governing plats and the subdivision ordinance, an electrical ordinance, and a plumbing ordinance all combined into one instrument. This is not to say that a city would not have the power under articles 1011a-1011j or simply under its police power to pass these same ordinances. The problem with the ordinance surfaces when we compare the duties given the Planning and Zoning Commission under the ordinance to the statutory grants of power for these Commissions.

The Planning and Zoning Commission was given the exact powers in Section 9 and 10 of the ordinance that a Planning Commission is specified to have under article 974a § 3 and § 4. Under article 1011g the Zoning Commission does not have the power to approve or disapprove plats and subdivisions but simply serves in an advisory capacity. Therefore, the powers granted under Section 9 and 10 to the Planning and Zoning Commission must be in its capacity as a Planning Commission. As such, the regulations in sections 9 and 10 were not adopted pursuant to any authority acquired pursuant to articles 1011a-1011j, but rather from authority acquired pursuant to article 974a, § 4. (See footnote 1) Although embodied in the same Commission, the Zoning Commission and Planning Commission serve separate and distinct functions pursuant to the authority given them under their respective statutes. An ordinance which purports to take the platting and subdividing responsibilities of a lawfully created and functioning Planning Commission under article 974a and subject its decision to review by a Board of Adjustment created under article 1011g is void. *Sparks v. Bolton,* 335 S.W.2d 780 (Tex.Civ.App.-Dallas 1960, no writ); *Hollis v. Parkland Corporation,* 120 Tex. 531, 40 S.W.2d 53 (Tex.Comm'n App.1931,

Page 610

judgmt adopted). A Board of Adjustment has no authority beyond that contemplated by article 1011g, and any provision of a municipal ordinance which grants same would be invalid. Swain v. Board of Adjustment of City of University Park, supra. Texas Consol. Theatres v. Pittillo, supra.

Therefore, we hold that any action of a Board of Adjustment in attempting to exercise appellate jurisdiction over a lawfully created and functioning Planning Commission, in its subdivision plat approval process, is void. Final authority for subdivision plat approval is granted by statute to the Planning Commission pursuant to article 974a. Acting in its capacity as a Planning Commission the commission properly refused to approve the plat until compliance had been achieved with Section 9 of Ordinance No. 11. We hold that the action of the Board of Adjustment was a nullity in respect to any plat approval process and as such neither the trial court nor this court has any authority under the posture of the case before us to mandamus the Planning Commission to grant approval based upon a decision from the *Board of Adjustment. City of Lufkin v. McVicker,* 510 S.W.2d 141 (Tex.Civ.App.-Beaumont 1973, no writ).

Under alternative reasoning we further hold that the technical platting requirements of article 974a also apply.

Article 974a requires that owners of land who wish to subdivide prepare a map or plat of the subdivision in accordance with certain minimum technical requirements regarding the lot and subdivision location. Under the express language of § 1 in article 974a

... every owner of any tract of land situated within the corporate limits ... who may hereafter divide the same in two or more parts for the purpose of ... laying out suburban lots or building lots, or any lots ... and streets ... for ... the use of purchasers or owners of lots fronting thereon or adjacent thereto...

must prepare a plat that meets all the requirements of article 974a. We feel a fair reading of § 1 encompasses this subdivision. The undisputed evidence clearly shows that appellee is the owner of a tract of land within the city limits of Hunter's Creek who wishes to divide the land into two parts. The record shows and appellee stated that he is laying out a suburban lot. The record shows and appellee stated he intended for there to be a common driveway or "street" for the use of the purchaser of the other lot and himself. Under this statute, the term "street" is applied both in a public and private sense. Article 974a encompasses the attempted division by appellee. See *Head v. City of Shoreacres,* 401 S.W.2d 703 (Tex.Civ.App.-Waco 1966, writ ref'd n. r. e.).

Section 1 further provides that each plat

shall accurately describe all of said subdivision or addition by metes and bounds and locate the same with respect to an original corner of the original survey of which it is a part, giving the dimensions thereof of said subdivision or addition, and dimensions of all streets, ... intended ... for the use of purchasers or owners of lots fronting thereon or adjacent thereto; provided, however, that no plat of any subdivision of any tract of land or any addition to any town or city shall be recorded unless the same shall accurately describe all of said subdivision or addition by metes and bounds and locate the same with respect to an original corner of the original survey of which it is a part giving the dimensions thereof of said subdivision or addition, and dimensions of all streets ... intended ... for the use of purchasers or owners of lots fronting thereon or adjacent thereto.

Section 2 provides

(t)hat every such plat shall be duly acknowledged by owners or proprietors of the land, ... in the manner required for the acknowledgment of deeds; and the said plat, subject to the provisions contained in this Act, shall be filed for record and be recorded in the office of the County Clerk of

the County in which the land lies.

Section 3 provides

(that) (i)t shall be unlawful for the County Clerk of any county in which such land

lies to receive or record any such plan, plat or replat, unless and until the same shall have been approved by the City Planning Commission...

The plats submitted by Hoff to the Planning Commission prior to January 28, 1981, do not accurately describe the subdivision by metes and bounds and do not locate same to an original corner of the original survey of which it is a part. None of the plats submitted by Hoff were duly acknowledged by any owner of the land to be subdivided; none contain descriptions of the dimensions of the proposed street within the proposed subdivision intended to be dedicated for the use of purchasers or owners of lots fronting thereon or adjacent thereto. There was not full compliance with article 974a §§ 1 and 2.

We find ourselves in much the same posture as the court in *Myers v. Zoning and Planning Commission of City of West University Place,* 521 S.W.2d 322 (Tex.Civ.App.-Houston (1st. Dist.) 1975, writ ref'd n. r. e.). The court in Myers held:

Since a copy of the plat to be filed with the county clerk must be filed with the city planning commission, it follows that the plat so filed must comply with the provisions of Section 1 and Section 2 of Article 974a... A copy of the plat ... does not show the original corner of the original survey of which the land is a part, nor is it acknowledged by the owners of the land. The owner of land must file with the county clerk a plat which has received approval of the city planning commission .... (and) (s)ince in our view the plat which petitioner desires to have recorded does not comply with the law entitling it to recordation, an order requiring the City Planning Commission ... (to approve the plat) would be useless.

521 S.W.2d at 325-326.

Appellees were not entitled to have their plat recorded. A writ of mandamus will not issue if it would be useless, unavailing and fruitless. *Parks v. Elliot,* 465 S.W.2d 434 (Tex.Civ.App.-Houston (14th Dist.) 1971, writ ref'd n. r. e.); Myers, supra.

Therefore, under either reasoning this case should be reversed and rendered for appellants, and against appellee.

---------

Notes:

[1] On May 20, 1980 Ordinance No. 340, a new zoning plan, was passed and contains no provisions purporting to control the subdivision of land and plats. On August 20, 1980 Ordinance No. 349 was passed specifically adopting rules and regulations governing plats and the subdivision of land.

---------